

HMG/BAM/JMB: USAO# 2025R00383
MCH 10/19/2025

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. MJM-25-334 |
| v. | : |
| | : (Wire Fraud, 18 U.S.C. § 1343; |
| VICTOR KILLEN, | : Aggravated Identity Theft, 18 U.S.C. |
| a/k/a "CHERRY," | : § 1028A; Aiding and Abetting, |
| | : 18 U.S.C. § 2; Forfeiture, 18 U.S.C. |
| Defendant. | : § 981(a)(1), 21 U.S.C. § 853(p), |
| | : 28 U.S.C. § 2461(c)) |

...oOo...

**INDICTMENT**

**COUNTS ONE TO THREE – WIRE FRAUD**

The Grand Jury for the District of Maryland charges:

1. **VICTOR KILLEN, a/k/a "CHERRY," ("KILLEN")** was a foreign national living in Maryland.

2. Car Dealership #1 was located in Montgomery County, Maryland. Car Dealership #1 sold a wide variety of cars, including many models of Mercedes Benz vehicles.

3. Wells Fargo Bank, N.A. ("Wells Fargo") and Bank of America, N.A. ("Bank of America") were financial institutions as defined in 18 U.S.C. § 20, and had physical branches, ATMs, teller windows, and employees within Maryland.

4. Wells Fargo issued cashier's checks to customers that bore the name of the remitter, *i.e.* the person purchasing the cashier's check, and the payee, *i.e.* the person or entity to whom the cashier's check was payable.

1

5. Person #10 was a real person who lived in the State of Michigan.

6. In or about July 2024, a new Mercedes-Benz AMG CLE 53 had a retail price exceeding $80,000.

## THE SCHEME TO DEFRAUD AND ITS OBJECTS

7. In or about July 2024, in the District of Maryland and elsewhere,

**VICTOR KILLEN,**
a/k/a "CHERRY,"

the defendant herein, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud Car Dealership #1, Wells Fargo, and Bank of America, and to obtain money and things of value by means of materially false and fraudulent pretenses, representations, and promises, including false representations regarding **KILLEN**'s identity and false representations about an altered cashier's check that **KILLEN** used to purchase a 2024 Mercedes-Benz vehicle.

## MANNER AND MEANS

8. It was part of the scheme to defraud that in or about July 2024, **KILLEN** obtained and possessed the name, date of birth, and social security number of Person #10.

9. It was further part of the scheme to defraud that in or about July 2024, **KILLEN** obtained and possessed a false and fictitious driver's license that bore **KILLEN**'s facial image, but contained the name, date of birth, and driver's license number of Person #10.

10. It was further part of the scheme to defraud that in or about July 2024, **KILLEN** obtained and possessed a false and fictitious social security card that bore the name and social security number of Person #10.

11. It was further part of the scheme to defraud that in or about July 2024, **KILLEN** visited Car Dealership #1 and communicated with employees of Car Dealership #1.

2

12. It was further part of the scheme to defraud that in or about July 2024, **KILLEN** pretended to be Person #10 in order to shop for and purchase a Mercedes Benz vehicle.

13. It was further part of the scheme to defraud that in or about July 2024, **KILLEN** presented a fraudulent driver's license and a fraudulent social security card bearing the name of Person #10 to Car Dealership #1.

14. It was further part of the scheme to fraud that in or about July 2024, a cashier's check from Wells Fargo was altered to show a value of $95,067.41 and was altered to show the remitter name of Person #10 (altered from the original true remitter name of Person #11).

15. It was further part of the scheme to defraud that in or about July 2024, **KILLEN** presented to Car Dealership #1 the altered Wells Fargo cashier's check that had the amount payable changed from $1 to $95,067.41 and had the remitter changed to Person #10.

16. It was further part of the scheme to defraud that on or about July 30, 2024, **KILLEN** purchased a Mercedes-Benz AMG CLE 53.

17. It was further part of the scheme to defraud that on or about July 30, 2024, **KILLEN** drove and used a Mercedes-Benz AMG CLE 53.

18. It was further part of the scheme to defraud that **KILLEN** presented false and fraudulent information and documents to Car Dealership #1, causing Car Dealership #1 to present the altered Wells Fargo cashier's check for deposit to Bank of America.

19. It was further part of the scheme to defraud that **KILLEN** caused multiple interstate wire communications.

3

## THE CHARGES

20. On or about the dates listed below, in the District of Maryland and elsewhere,

**VICTOR KILLEN,**
**a/k/a "CHERRY,"**

the defendant herein, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, did knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signals, signs and sounds, as set forth below:

| COUNT | DATE | DESCRIPTION | INTERSTATE WIRE COMMUNICATION DETAILS |
|---|---|---|---|
| 1 | July 29, 2024 | Car Dealership #1's transmission of information about the sale of a Mercedes-Benz vehicle. | Maryland to a location outside of Maryland |
| 2 | July 30, 2024 | Car Dealership #1's deposit of a purported Wells Fargo cashier's check for $95,067.41 at Bank of America. | Maryland to a location outside of Maryland |
| 3 | Aug. 1, 2024 | Communication that $95,067.41 Wells Fargo cashier's check was altered. | Outside of Maryland to Maryland |

18 U.S.C. §1343
18 U.S.C. § 2

## COUNT FOUR – AGGRAVATED IDENTITY THEFT

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 – 6 of Count One of this Indictment are incorporated here by reference.

2. On or about July 27, 2024, in the District of Maryland, the defendant herein,

**VICTOR KILLEN,**
**a/k/a "CHERRY,"**

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person; to wit, the personal identifying information of Person #10, including his name, date of birth, social security number, and driver's license number, during and in relation to Wire Fraud, in violation of 18 U.S.C. § 1343.


18 U.S.C. § 1028A(a)(1), (c)(4)
18 U.S.C. § 2

5

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), as a result of the defendant's conviction under the offenses in Counts One through Three of this Indictment.

### Wire Fraud Forfeiture

2. Upon conviction of the offenses in Counts One through Three of this Indictment, the defendant,

**VICTOR KILLEN,**
a/k/a "CHERRY,"

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the scheme to defraud.

3. The property to be forfeited includes, but is not limited to, a money judgment in the amount of at least $95,067.41.

### Substitute Assets

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

6

     e.     has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

*Kelly O. Hayes/hwg*

KELLY O. HAYES
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**  Date: 10-29-2025

Foreperson

7